[Civ. No. 233. Fourth Appellate District.—October 9, 1930.]

ARMENIA B. PACKER, Appellant, v. JOHN WAGNER, Respondent.

ARMENIA B. PACKER, Administratrix, etc., Appellant, v. JOHN WAGNER, Respondent.

Leonard Evans and Fred W. Heath for Appellant.

George L. Greer for Respondent.

WARMER, J., *pro tem.*—The court ordered the above-entitled actions consolidated for the purposes of trial, after a stipulation of counsel that the court might make such

order, and both causes come here on the same record. The plaintiff in each action charges negligence. The answer denies the allegations of negligence and sets up a plea of contributory negligence. During the pendency of the action entitled *Hartley C. Packer* v. *John E. Wagner,* plaintiff Hartley C. Packer died, and by stipulation of counsel Armenia B. Packer, administratrix of the estate of Hartley C. Packer, deceased, was substituted as a party plaintiff in said action. Both causes of action arose out of a collision between automobiles at the intersection of Lemon Street and Broadway in the city of Anaheim, Orange County, California. Lemon Street runs north and south; Broadway east and west, said streets crossing at right angles. On May 26, 1926, plaintiffs were driving an automobile south on said Lemon Street and the defendant Wagner was driving a Cadillac 59 roadster east on Broadway. A stranger to this action was driving a Franklin automobile north on said Lemon Street. Plaintiffs were proceeding south on Lemon Street at a rate of speed of twenty-two miles per hour when they were thirty feet from the intersection and the defendant was traveling east at about thirty miles per hour. Defendant saw the Franklin car and observed that it was going to stop on the south side of Broadway, and as he said when he saw the Franklin car was going to stop, "I stepped on it. You know what a Cad. will do." Defendant did not see plaintiff's car until it was right in front of him, too close to stop or avoid collision. The plaintiff Armenia B. Packer testified that she first saw the Cadillac automobile between 200 and 300 feet west of Broadway as they approached the intersection. As to what was done by plaintiffs after beginning to cross said intersection, plaintiff testified as follows:

"We gave the car that was so well to the west no further consideration because it was too far away to be considered and continued across, and as we reached slightly south of the center of the button I realized this car approaching was coming at a great rate of speed, and instead of slowing as one would suppose a car would do, as it approached the intersection it seemed suddenly to leap in speed,—at least it was coming toward me at a great rate of speed and I thought 'If that car doesn't stop quick he is going to come very close to us,' and before another thought could formulate itself this car with a big blue hood on it was coming

closer as though he were going to crumple the fenders, and that is the last I knew was seeing the great big blue hood coming straight for presumably our hood. . . .

"As you saw the car approaching you as you were crossing Broadway and when you saw this car approaching near to you would you be able to form any estimate of the speed?

"A. Not miles, no,—but at that point it seemed the Cadillac then was as far back as the westerly line of the Huddle property, the Undertaking corner,—it was that far back when I was conscious and instead of slowing as he should have done he was coming very fast at that point.

"Q. That would be in feet about how far?

"A. I presume in the neighborhood of 100 feet."

The car of the defendant collided with the car of plaintiff striking the plaintiff's car almost in the middle. Plaintiff's car rolled over, striking on the radiator of the Franklin car, which was stopped a little south of a white line extending across Lemon Street on the south side of Broadway and somewhat easterly from the center line of Lemon Street. The plaintiffs were injured as a result of the collision.

■ The plaintiff Armenia B. Packer testified that they proceeded across the intersection at from 10 to 15 miles an hour. Another witness testified that they were proceeding south on Lemon Street in the usual lane of traffic at about 22 miles an hour when 30 feet from the intersection. Another witness testified that they had proceeded across the intersection at less than 20 miles an hour. From the above statement of facts we are of the opinion that there was substantial evidence from which the court might find that the plaintiffs were driving across the intersection at a greater rate of speed than 15 miles per hour. The deceased was driving plaintiff's car.

■ There was a blackboard used by counsel for the purpose of illustrating the testimony of witnesses. No map or reproduction of such diagram is in the record.

"In an action where a map or blackboard is used in the trial court to illustrate the testimony of witnesses and such map or copy of such diagram and markings upon the blackboard are not a part of the record on appeal the appellate court must assume that the trial court in reaching its conclusions as to the possibility of the responsibility for the ac-

cident was guided to some extent at least by such diagram." (*Godeau* v. *Levy*, 72 Cal. App. 13 [236 Pac. 354].)

■ On appeal every substantial conflict in the evidence must be resolved in favor of the finding. (*Robertson* v. *Finkler*, 27 Cal. App. 322 [149 Pac. 784].)

"In examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is . . . to be resolved in favor of the finding." (*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157].)

■ When the evidence is conflicting, or when reasonable men might differ as to the inferences which ought to be drawn from the undisputed evidence, the question of negligence or contributory negligence is not one of law, but of fact. (*Davies* v. *Oceanic Steamship Co.*, 89 Cal. 280 [26 Pac. 827].)

"Especially is this rule applicable when the negligence of the plaintiff depends upon . . . a comparison of his conduct with that which may be assumed to be the conduct of an ordinary man. . . . 'Where the essential fact in a case is whether contributory negligence did or did not exist, and this depends upon the credibility of witnesses or inference from facts and circumstances about which honest and impartial men might differ, such a case should be submitted to the jury.' " (*Smith* v. *Occidental & Oriental Steamship Co.*, 99 Cal. 462 [34 Pac. 84, 85].)

■ A reviewing court is not justified in disturbing a judgment unless it appears that upon no hypothesis is there sufficient substantial evidence to support it (*People* v. *Tom Woo*, 181 Cal. 315 [184 Pac. 389]), nor can it review a finding based upon a reasonable inference, though in its judgment the opposite inference is the more probable. (2 Cal. Jur., Appeal and Error, sec. 549, p. 935; *Ryder* v. *Bamberger*, 172 Cal. 791 [158 Pac. 753]; *Skaggs* v. *Wiley*, 108 Cal. App. 429 [292 Pac. 132].)

See *Sites* v. *Howrey*, 108 Cal. App. 348 [291 Pac. 597], to the effect that where plaintiff was riding in an automobile which her husband was driving, and the husband observed the

approach of defendant some distance from the intersection, but believed that he had ample time to cross the intersection ahead of defendant, and after the husband had entered the intersection he again observed defendant approaching about 30 feet from the intersection and traveling at a high rate of speed, and the husband then applied his brakes and swerved to the right in an attempt to avoid the collision, whether or not plaintiff or her husband was guilty of contributory negligence under the circumstances was a question for the jury, and its verdict was conclusive on appeal.

*Kienlen* v. *Holt,* 106 Cal. App. 135 [288 Pac. 866], is a case where plaintiff saw defendant's automobile coming when it was approximately 365 feet distant from the intersection and plaintiff had 110 feet to travel to cross the intersection, and plaintiff's wife saw defendant's automobile coming when it was 165 feet from the intersection and when plaintiff's automobile had approximately 55 feet to travel before passing out of the intersection, plaintiff had a right to assume that defendant would operate his car at a careful and prudent speed, and under the circumstances, it cannot be said that plaintiffs were guilty of contributory negligence as a matter of law in continuing across the intersection after observing the approach of defendant's machine.

In the case of *Donat* v. *Dillon,* 192 Cal. 426 [221 Pac. 193, 194], the court said: ''Assuming, therefore, that the defendant had the right of way, he was required to proceed across the intersection in a careful and prudent manner, ever watchful of the direction in which danger was most likely to be apprehended. He could not close his eyes so far as southbound traffic on Chester avenue was concerned. To the contrary, having observed Riddle's car approaching at an exceedingly fast rate of speed for that vicinity, the defendant was no longer entitled to rely upon the presumption that the driver of this machine would comply with the rules of the road, and he was bound to take such reasonable measures as he could, under the circumstances, to prevent the injury. It was, therefore, a question for the trial court to determine upon all the evidence and the reasonable deductions therefrom whether the defendant, after having seen the approaching machine, continued to exercise the care and prudence which a reasonable man would have exercised under the circumstances.''

In the case of *Flores* v. *Fitzgerald*, 204 Cal. 374 [268 Pac. 369], the court held that in an action for damages for personal injuries received by plaintiff in a collision between his motorcycle and an automobile at the intersection of two city streets, the fact that plaintiff failed to observe the movements of defendant's machine after first seeing it 150 feet west of the intersection did not make him guilty of contributory negligence as a matter of law, but the question was one of fact for determination by the court, as the motorist was obligated to proceed across the intersection in a careful and prudent manner and to take such reasonable measures as he could under the circumstances to prevent the injury.

In the case at bar plaintiffs proceeded across the intersection after seeing defendant's car 200 or 300 feet distant. They next saw defendant's car about 100 feet away apparently suddenly increasing its speed. They proceeded at the same rate of speed in the same direction, or, in other words, did nothing to avoid the collision. Whether they were justified in so doing under all the conditions and circumstances present depends upon a comparison of their conduct with that which may be assumed to be the conduct of an ordinarily prudent man. Under the circumstances here presented we cannot say that reasonable men might draw but one conclusion. The question was therefore one for the trial court, and its finding adverse to the appellant is conclusive upon this court.

The judgment is affirmed.

Marks, Acting P. J., and Barnard, J., concurred.